IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BONNIE NOFSINGER, individually and on behalf of all others similarly situated | ) ) ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) ) | No. |
| JACKSON NATIONAL LIFE INSURANCE COMPANY, a Michigan corporation | ) ) ) ) | **JURY TRIAL DEMANDED** |
| *Defendant*. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Bonnie Nofsinger, by and through her attorneys, brings this civil action on behalf of herself and other annuity contract holders who purchased annuity contracts from Defendant, Jackson National Life Insurance Company ("Jackson National" or "Defendant"), who were assessed unauthorized charges in the form "surrender charges." Plaintiff now seeks relief and damages to stop Defendant's wrongful conduct in violation of applicable law.

## NATURE OF THE ACTION

1. Defendant, Jackson National, is an insurance company that issued annuity contracts to Plaintiff and other members of the putative Class and Subclass.

2. Defendant assessed unlawful and unauthorized "surrender charges" in violation of law and in breach of the annuity contracts owned by Plaintiff and the other members of the putative Class and Subclass.

3. Plaintiff, on behalf of herself and the members of the putative Class and Subclass, brings this action seeking actual and compensatory damages, as well as injunctive relief, for

Defendant's actions in assessing these unlawful and unauthorized surrender charges.

## JURISDICTION AND VENUE

4. Jackson National is, and has been at all times relevant herein, registered to do business in the State of Illinois.

5. This Court has diversity jurisdiction under 28 U.S.C. § 1332(d), because (i) at least one member of the putative class is a citizen of a state different from any Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to the instant action.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because Jackson National has agents in this District and transacts business in this District, and because a substantial part of the events giving rise to Plaintiff's claims occurred in this District as Defendant sold the type of annuity purchased by Plaintiff in this District.

## PARTIES

7. Plaintiff Bonnie Nofsinger is a citizen and resident of the State of Illinois.

8. Jackson National is a company created and existing under the laws of the State of Michigan and maintains its principal place of business and headquarters in Lansing, Michigan. Licensed to transact insurance in 50 states, Jackson National describes itself as one of the country's largest individual annuity underwriters in the life insurance industry.

9. Jackson National sells annuity products around the country, including to residents in this District, and transacts business in this District including employing agents in this District.

## FACTUAL BACKGROUND

10. An annuity is a type of insurance product. When purchasing an annuity, a consumer enters into a contract whereby she agrees to make an upfront lump-sum payment (a

premium), or series of payments (premiums), to the insurance company in exchange for its promise to make payments at a later date. With a deferred annuity, the product at issue here, the insurance company does not begin making payments immediately upon receipt of the premium. Instead, during this deferment period, the premiums grow on a tax-deferred basis at varying or fixed interest rates, depending on the terms of the specific annuity.

11. The period of time during which consumers, like Plaintiff, pay premiums to the insurance company and accrue interest is known as the "accumulation period." Once the accumulation period ends an annuity reaches its "maturity date," after which the annuity owner can elect to receive their funds either as a lump sum, a series of monthly payments, or in another manner as determined by the parties' annuity contract.

12. In a deferred annuity, consumers cannot withdraw their investments or the earned interest without penalty for a predetermined number of years after the initial payment of the premium. This penalty for early withdrawal is known as a "surrender charge." The surrender charge is calculated as a percentage of the annuity principal accumulated up to the time of withdrawal, and typically starts as high as 10%, but diminishes further with each passing year for a specified number of years. The surrender charge is often a hefty penalty to discourage early withdrawal of the annuity principal. As a result, the terms of deferred annuities serve to severely limit consumers' access to their funds until the underwriter recoups certain costs and otherwise profits from investment of the annuity principal.

13. Surrender charges are an important component of annuity policies and a source of significant revenue to underwriters, including Jackson National. Indeed, according to the SEC, which has published guidelines for consumers about such charges, their impact on the value of a purchased annuity contract is considerable:

3

> You will pay several charges when you invest in a variable annuity. Be sure you understand all the charges before you invest. **These charges will reduce the value of your account and the return on your investment.** Often, they will include the following:
>
> **Surrender charges** – If you withdraw money from a variable annuity within a certain period after a purchase payment (typically within six to eight years, but sometimes as long as ten years), the insurance company usually will assess a "surrender" charge, which is a type of sales charge. This charge is used to pay your financial professional a commission for selling the variable annuity to you. Generally, the surrender charge is a percentage of the amount withdrawn, and declines gradually over a period of several years, known as the "**surrender period**." For example, a 7% charge might apply in the first year after a purchase payment, 6% in the second year, 5% in the third year, and so on until the eighth year, when the surrender charge no longer applies. Often, contracts will allow you to withdraw part of your account value each year – 10% or 15% of your account value, for example – without paying a surrender charge.
>
> **Example**: You purchase a variable annuity contract with a $10,000 purchase payment. The contract has a schedule of surrender charges, beginning with a 7% charge in the first year, and declining by 1% each year. In addition, you are allowed to withdraw 10% of your contract value each year free of surrender charges. In the first year, you decide to withdraw $5,000, or one-half of your contract value of $10,000 (assuming that your contract value has not increased or decreased because of investment performance). In this case, you could withdraw $1,000 (10% of contract value) free of surrender charges, but you would pay a surrender charge of 7%, or $280, on the other $4,000 withdrawn.

*See* https://www.sec.gov/investor/pubs/varannty.htm (emphasis added).

14. While the assessment of surrender charges is commonplace for withdrawals occurring prior to the maturity date, Defendant has assessed Plaintiff and members of the putative Class and Subclass surrender charges for withdrawals occurring *after* the stated maturity date, even years after the maturity date, despite no provision in its annuity contract or other legal authority which permits it to do so.

**Factual Allegations With Respect to Plaintiff**

15. In 1991, in an effort to invest in a more secure retirement, Plaintiff entered into an annuity contract with Defendant. At that time, Plaintiff was 43 years of age and employed as a

4

high school teacher in a public school district in Illinois. Plaintiff purchased a deferred annuity agreement from Defendant known as an "Individual Deferred Annuity Contract," or the "TSAnnuity," which Defendant stated was offered for the purpose of "creating a supplemental retirement plan for teachers and employees of school districts…."

16. The TSAnnuity required Plaintiff to contribute an annual premium in the amount of $1,200.00, to be paid in monthly installments of $100.00 drawn directly from her public school district paycheck. Plaintiff paid all such $100.00 monthly premiums due to Defendant, without ever missing a single payment. Plaintiff fulfilled all of her requirements under the terms of the TSAnnuity.

17. Plaintiff's TSAnnuity had an issue date of May 1, 1991 and an "anticipated maturity date" of May 1, 2008.[1]

18. However, sometime thereafter Defendant purported to unilaterally change the maturity date of Plaintiff's TSAnnuity for its own benefit to March 1, 2017, which change resulted in Defendant retaining Plaintiff's premiums and annuity balance for an additional period beyond the TSAnnuity's maturity date of May 1, 2008.

19. Defendant never obtained Plaintiff's permission to extend the TSAnnuity's maturity date beyond its May 1, 2008 maturity date, and at no time did Defendant obtain Plaintiff's permission or otherwise have any contractual basis or legal authority to assess a surrender charge against Plaintiff after such maturity date.

20. In early 2017, Defendant sent Plaintiff a letter stating that the TSAnnuity's maturity date was approaching and that she needed to choose how she wished to receive the

---

[1] A true and accurate copy of Plaintiff's TSAnnuity with Defendant is attached hereto as <u>Exhibit A</u>.

income from it.[2] Plaintiff thereafter elected to receive a lump-sum payout of the TSAnnuity.

21. As of January 18, 2017, around the time Plaintiff elected to receive her annuity as a lump sum, the "Accumulation Value" of the TSAnnuity was $103,962.96. However, instead of paying Plaintiff the Accumulation Value of the TSAnnuity, as she was due, Defendant wrongly assessed a "surrender charge" of $17,887.68 upon Plaintiff before disbursing her TSAnnuity funds to her. Thus, instead of receiving her full annuity policy benefits in the amount of $103,962.96, Plaintiff received only $86,055.28 from Defendant (which sum was net a $20.00 wire fee). On January 18, 2017, Defendant, through its vice-president of policy owner services, sent Plaintiff a letter itemizing the wrongful $17,887.68 "surrender charge" deduction.[3]

22. The TSAnnuity states that "This Policy and the Application...constitute the entire contract between the parties." Nowhere does the TSAnnuity allow Defendant to assess surrender charges, much less so after the maturity date. Indeed, the term "surrender charge" does not even appear in the agreement between Plaintiff and Defendant.

23. By assessing unauthorized surrender charges, Defendant violated the plain language of its annuity contract with Plaintiff and the other members of the Class, which states, "There are no sales, collection, service, or administrative fees." Furthermore, Defendant's unauthorized assessment of such surrender charges is contrary to the description and guidance relating to surrender charges put forth by the SEC for consumers' protection. Such improper conduct should be prohibited and all past and current contract holders should be compensated for the improper surrender charges assessed.

24. The surrender charges imposed by Defendant were also unlawful and in breach of

---

[2] A true and accurate copy of this letter is attached hereto as <u>Exhibit B</u>.
[3] A true and accurate copy of this letter is attached hereto as <u>Exhibit C</u>.

contract, as they were assessed against Plaintiff and other members of the Class after their maturity dates. Defendant's conduct was particularly egregious as it assessed such unlawful charges after the maturity date even against consumers who, like Plaintiff, paid all of their premiums on time and never withdrew any funds from their annuity during a "surrender period."

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff brings this action individually and on behalf of all similarly situated persons as the Court may determine to be appropriate for class certification treatment, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b). Plaintiff seeks to represent the following national class and Illinois subclass:

**The National Surrender Charge Class**: All persons nationwide who purchased an annuity product from Jackson National and/or its affiliates, and who, within the applicable statute of limitations, were assessed a surrender charge after the maturity date of their annuity product, or who were assessed a surrender charge in an unauthorized amount.

**The Illinois Surrender Charge Subclass**: All Illinois residents who purchased an annuity product from Jackson National and/or its affiliates, and who, within the applicable statute of limitations, were assessed a surrender charge after the maturity date of their annuity product, or who were assessed a surrender charge in an unauthorized amount.

26. Excluded from the Class and Subclass are Defendant, Defendant's officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity.

27. The Class and Subclass are each reasonably estimated to be in the thousands or tens of thousands such that joinder of all their members is impracticable. The precise number of

members of the putative Class and Subclass is unknown to Plaintiff, but can be ascertained through Defendant's records.

28. There is a well-defined community of interest in the relevant questions of law and fact affecting the members of the putative Class and Subclass, including the uniform application of surrender charges in violation of the contract provisions.

29. Common questions of law and fact predominate over any individual questions affecting the members of the putative Class and Subclass, including, but not limited to, the following:

- Whether Defendant breached its annuity contracts by collecting improper surrender charges;

- Whether Defendant misrepresented its assessment of surrender charges in its annuity contracts, and whether such conduct violated the Illinois Consumer Fraud Act and/or the Michigan Consumer Protection Act;

- Whether Defendant violated its fiduciary duties to Plaintiff and the Class members by wrongfully assessing surrender charges;

- Whether Plaintiff and the Class members have sustained damages, and the amount of damages that Class members are entitled to; and

- Whether declaratory or injunctive relief should be granted to stop the offending conduct.

30. With respect to each member of the putative Class and Subclass, Plaintiff's claims are typical of those of the absent Class and Subclass members. If brought and prosecuted individually, the claims of each member of the putative Class and Subclass would require proof of many of the same material and substantive facts and would rely upon the same remedial theories, seeking the same relief.

31. Plaintiff will fairly and adequately protect the interests of the putative Class and Subclass, and Plaintiff has no interests adverse to, or that directly and irrevocably conflict with,

the interests of other members of the putative Class or Subclass.

32. Plaintiff is willing and prepared to serve the Court and the putative Class and Subclass in a representative capacity with all of the obligations and duties material thereto.

33. Plaintiff has retained the services of counsel who are experienced in complex class action litigation. Plaintiff's counsel will adequately prosecute this action, and will otherwise assert, protect and fairly and adequately represent Plaintiff and all absent members of the Class and Subclass.

34. Class certification is appropriate under F.R.C.P. 23(b)(1), in that the prosecution of separate actions by individual members of the putative Class or Subclass would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the parties opposing the putative Class and Subclass. Such incompatible standards of conduct and varying adjudications on the same essential facts, proof and legal theories would also create and allow the existence of inconsistent and incompatible rights within the Class and Subclass.

35. Class certification is appropriate under F.R.C.P. 23(b)(3), in that common questions of law and fact predominate over any questions affecting only individual members of the putative Class and Subclass.

36. Moreover, a class action is superior to other methods for the fair and efficient adjudication of the controversies raised in this Complaint because:

  a. Individual claims by the members of the Class and Subclass would be impracticable as the costs of pursuit would exceed what any one Class member has at stake;

  b. On information and belief, no litigation has been commenced over the

    controversies alleged in this Complaint, and individual members of the Class and Subclass are unlikely to have an interest in separately prosecuting and controlling individual actions;

  c. The concentration of litigation of these common claims in one forum will achieve efficiency and promote judicial economy; and

  d. The proposed class action is manageable.

  37. Class certification is also appropriate because Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the putative Class and Subclass, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass and making injunctive or corresponding declaratory relief appropriate for the Class and Subclass as a whole.

**COUNT I**
**Breach of Contract**
**(On behalf of Plaintiff and the National Surrender Charge Class)**

  38. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

  39. Defendant entered into annuity contracts with Plaintiff and the other members of the Class.

  40. A material term of each such annuity Contract between Defendant and the members of the Class was Defendant's obligation to pay in full all amounts owed to Plaintiff and the other members of the Class under the terms of the Contracts.

  41. An additional material term of each such Contract was Defendant's representation that it would not assess any sales, collection, service, or administrative fees pursuant to the Contracts.

42. Plaintiff and the other members of the Class satisfied their respective obligations under the annuity contracts.

43. By assessing unauthorized surrender charges to Plaintiff and every other member of the Class, and by not paying in full all amounts owed to each member of the Class, Defendant has breached its Contracts with Plaintiff and the other members of the Class.

44. Plaintiff and the other members of the Class were each damaged by the amount due and owing to them that was withheld by Defendant, including all unauthorized surrender charges. The total damages to the Class exceed the sum of five million dollars ($5,000,000).

## COUNT II
### Breach of Fiduciary Duty
**(On behalf of Plaintiff and the National Surrender Charge Class)**

45. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46. Defendant, as the administrator and holder of the annuities purchased by Plaintiff and the other members of the Class, controls the premium amounts and has complete control over the amounts deducted as surrender charges. As such, Defendant has a fiduciary relationship with Plaintiff and the other members of the Class which created a fiduciary duty owed by the Defendant to the Plaintiff and other members of the Class.

47. Defendant breached its fiduciary duty to Plaintiff and the other members of the Class by intentionally or recklessly acting contrary to the provisions in its annuity contracts for its own benefit, rather than for the benefit of Plaintiff and the other members of the Class. Defendant also breached its fiduciary duty by failing to inform Plaintiff and the other members of the Class that Defendant was acting in contravention of the terms of the annuity contracts and the representations made to Plaintiff and the other members of the Class.

48. Defendant's failure to act as a fiduciary in the best interests of Plaintiff and the other members of the Class by engaging in such acts, omissions and misrepresentations directly and proximately caused injury and resulted in damage to Plaintiff and the other members of the Class. These acts and omissions consisted of assessing and collecting wrongful surrender charges and reducing benefits which were rightfully due to Plaintiff and the other members of the Class under the annuity contracts they entered into with Defendant.

49. Plaintiff and other members of the Class seek damages directly and proximately caused by Defendant's failure to uphold its fiduciary duty.

50. The injuries to Plaintiff and the other members of the Class resulted from Defendant's intentional or reckless acts in violation of the fiduciary duty it owed to Plaintiff and the other members of the Class, which entitles Plaintiff and the other members of the Class to exemplary damages. Defendant knew, or was severely reckless in not knowing, that its actions were in violation of its fiduciary duties owed to its customers and that its acts and omissions were material and harmful to Plaintiff and all other members of the Class.

## COUNT III
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2
### (On behalf of Plaintiff and the Illinois Surrender Charge Subclass)

51. Plaintiff incorporates by reference all of the foregoing allegations as if fully set forth herein.

52. Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act provides in relevant part that:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression

or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

53. Plaintiff and the other members of the Illinois Subclass are "consumers" within the meaning of Section 1(e) the ICFA.

54. Defendant's conduct as alleged herein occurred in the course of trade or commerce.

55. Defendant's actions in affirmatively misrepresenting that it would not assess any sales, collection, service, or administrative fees offends public policy, has caused and continues to cause substantial injury to consumers, and constitutes an unfair and deceptive trade practice in violation of Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

56. Defendant has also caused and continues to cause substantial injury to consumers by assessing surrender charges that are not provided for or disclosed in its contracts, and assessing such unauthorized charges after the maturity date. Such actions constitute an unfair and deceptive trade practice in violation of Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

57. As a direct and proximate cause of Defendant's deceptive and unfair trade practices of assessing undisclosed and unauthorized surrender charges, Plaintiff and the other members of the Illinois Subclass suffered actual damages, including monetary losses in the amounts of the unauthorized surrender charges assessed.

58. Defendant's conduct is in violation of the ICFA, and pursuant to 815 ILCS 505/10a, Plaintiff and the other members of the Illinois Subclass are entitled to damages in an

amount to be proven at trial, reasonable attorneys' fees, injunctive relief prohibiting Defendant's unfair and deceptive conduct going forward, and any other penalties or awards that may be appropriate under applicable law.

### COUNT IV
### Violations of the Michigan Consumer Protection Act
### Mich. Comp. Laws § 445.901, *et seq*.
### (On behalf of Plaintiff and the National Surrender Charge Class)

59. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60. Defendant is headquartered in Michigan and its unfair and deceptive acts of assessing Plaintiff and the other members of the Class unauthorized surrender charges in violation of its contracts were carried out in Michigan.

61. The Michigan Consumer Protection Act was enacted to protect consumers from "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce.".

62. By failing to explain the precise conditions under which Defendant would assess surrender charges against consumers' annuity policies, Defendant caused confusion as to the obligations and rights available to consumers who purchased its annuity products, in violation of Mich. Comp. Laws §445.903(1)(n).

63. Plaintiff and other members of the Class could not reasonably have known, and Defendant failed to reveal the fact, that it would assess excess surrender charges against the value of consumers' annuity policies, thereby violating Mich. Comp. Laws §445.903(1)(s).

64. Defendant also represented, and caused Plaintiff and the other members of the Class to reasonably believe that they would receive the entire "accumulation value" of their

annuities from Defendant when they fulfilled their contractual obligations to Defendant, even though that was not actually the case and Defendant instead assessed additional surrender charges, thereby violating Mich. Comp. Laws § 445.903(1)(bb).

65. Defendant misrepresented the type and amount of fees it would assess against annuity contract holders, and assessed Plaintiff and the other members of the Class surrender charges that were specifically prohibited by the annuity contracts entered into by Defendant.

66. Through the misleading and deceptive acts carried out by Defendant in direct violation of the annuity contracts Defendant entered into with Plaintiff and the other members of the Class, Defendant has violated the Michigan Consumer Protection Act.

67. Pursuant to the Michigan Consumer Protection Act, Plaintiff and the other members of the Class are entitled to damages in an amount to be proven at trial, reasonable attorneys' fees, injunctive relief prohibiting Defendant's unfair and deceptive conduct going forward, and any other penalties or awards that may be appropriate under applicable law.

WHEREFORE, for the reasons set forth above, Plaintiff requests relief and judgment against Defendant as follows:

   a. An Order certifying the Class and Subclass as defined above;

   b. An award of actual and compensatory damages to Plaintiff and the other members of the Class and Subclass for all damages sustained as a result of Defendant's wrongdoing, in amounts to be proven at trial, including prejudgment interest thereon;

   c. Imposing a constructive trust against Defendant for the benefit of Plaintiff and members of the Class and Subclass;

   d. Enjoining Defendant from its further assessment of improper surrender charges;

e. An award of reasonable attorneys' fees and costs; and

f. Such further and other relief as the Court deems reasonable and just.

## JURY DEMAND

Pursuant to Rule 38(b), Plaintiff hereby demands trial by jury on all claims and issues so triable.

Dated: May 4, 2017											Respectfully submitted,

BONNIE NOFSINGER, individually
and on behalf of all others similarly situated

By:	/s/ Eugene Y. Turin

Scott A. Morgan
MORGAN LAW FIRM, LTD.
55 West Wacker Drive, Suite 900
Chicago, Illinois 60601
smorgan@smorgan-law.com
Tel. 312.327.3386

John Sawin
SAWIN LAW FIRM, LTD.
55 West Wacker Drive, Suite 900
Chicago, Illinois 60601
jsawin@sawinlawyers.com
Tel. 312.853.2490

Myles McGuire
Evan M. Meyers
Eugene Y. Turin
David L. Gerbie
MCGUIRE LAW, P.C.
55 West Wacker Drive, Suite 900
Chicago, Illinois 60601
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com
dgerbie@mcgpc.com
Tel: 312.893.7002

*Attorneys for Plaintiff and the proposed Class and Subclass*