**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BONNIE NOFSINGER, individually and on behalf of similarly situated individuals, | ) ) ) | |
| *Plaintiff*, | ) ) | Case No. 2017-cv-03367 |
| v. | ) ) | Hon. John J. Tharp |
| JACKSON NATIONAL LIFE INSURANCE COMPANY, a Michigan corporation, | ) ) ) ) | Magistrate M. David Weisman |
| *Defendant*. | ) ) ) | |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff, Bonnie Nofsinger, by and through her undersigned counsel, pursuant to Fed. R. Civ. P. 23, moves for entry of an order certifying the Class and Subclass proposed below, appointing Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel. In support of her Motion, Plaintiff submits the following Memorandum of Law.

Dated: December 20, 2019

Respectfully submitted,

BONNIE NOFSINGER, individually and on behalf of a Class and Subclass of similarly situated individuals

By: */s/ David L. Gerbie*
*One of Plaintiff's Attorneys*

Myles McGuire
Evan M. Meyers
David L. Gerbie
MCGUIRE LAW, P.C.
55 West Wacker Drive, 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

TABLE OF CONTENTS

Table of Authorities ............................................................................................. iii

I.      INTRODUCTION .........................................................................................1

II.     FACTS SPECIFIC TO PLAINTIFF.............................................................3

III.    ARGUMENT ................................................................................................4

      A.  The Underlying Misconduct: Surrender Charges And The Class ................................4

      B.  The Underlying Misconduct: Surrender Letters .............................................7

          1.  The Surrender Letters Are Deceptive And Unfair ....................................7

          2.  The Surrender Letters Are Particularly Deceptive And Unfair to Dual Fund Annuity Holders....................................................................9

IV.    THE PROPOSED CLASS AND SUBCLASS ..............................................10

V.     THE PROPOSED CLASS AND SUBCLASS ARE CERTIFIABLE UNDER FEDERAL RULE 23(a)..........................................................................................11

      A.  Defendant Does Not Dispute The Numerosity Of The Class And Subclass ..............12

      B.  The Class And Subclass Are Easily Ascertainable Based On Defendant's Records...13

      C.  Commonality: Defendant's Uniform Conduct Affected All Class Members .............15

      D.  Plaintiff's Claims Are Typical, As They All Arise From Defendant's Singular Course Of Conduct..................................................................................18

      E.  Plaintiff And Her Counsel Will Adequately Protect Class Members' Interests.........19

VI.    THE PROPOSED CLASS AND SUBCLASS ARE CERTIFIABLE UNDER FEDERAL

RULE 23(b)(3)............................................................................................21

      A.  The Calculation of Damages Is Explicitly Measurable On A Class-Wide Basis .......22

      B.  Common Questions Predominate Within The Class and Subclass............................23

      C.  A Class Action Is The Most Efficient Way Of Adjudicating The Class Members' Claims And Is Superior To A Multitude Of Individual Lawsuits ...............................25

i

VII.     PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL .................26

VIII.    CONCLUSION ............................................................................................................26

Certificate of Service .......................................................................................................28

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591 (1997)..............................................................................................23, 25

*Arenson v. Whitehall Convalescent and Nursing Home, Inc.*,
    164 F.R.D. 659 (N.D. Ill. 1996).................................................................. 15-16, 22

*Barragan v. Evanger's Dog and Cat Food Co.*,
    259 F.R.D. 330 (N.D. Ill. 2009).............................................................................12

*Beaton v. SpeedyPC Software*,
    907 F.3d 1018 (7th Cir. 2018) ...............................................................................18

*Bell v. PNC Bank Nat. Ass'n*,
    800 F.3d 360 (7th Cir. 2015) .................................................................................23

*Birchmeier v. Caribbean Cruise Line, Inc.*,
    216 Ill. 2d 100 (2005) ..................................................................................... 13-14

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
    280 F.R.D. 408 (N.D. Ill. 2012)...................................................................... 13-14

*Butler v. Sears, Roebuck and Co.*,
    727 F.3d 796 (7th Cir. 2013) .................................................................................22

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)................................................................................................22

*De La Fuente v. Stokely-Van Camp, Inc.*,
    713 F.2d 225 (7th Cir. 1983) ...........................................................................18, 22

*Dix v. Am. Bankers Life Assur. Co. of Fla.*,
    429 Mich. 410 N.W.2d 206 (1987)......................................................................16

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)..............................................................................................11

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011)..............................................................................................23

*Flynn v. FCA US LLC*,
    327 F.R.D. 206 (S.D. Ill. 2018) .......................................................................15, 22

*Gammon v. GC Servs. Ltd. P'ship*,
    162 F.R.D. 313, 317 (N.D. Ill. 1995) ...................................................................20

*Gasper v. Linvatec Corp.*,
    167 F.R.D. 51 (N.D. Ill. 1996) .........................................................................18

*Gen. Tel Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ....................................................................................26

*Golon v. Ohio Savs. Bank*,
    No. 98-cv-7430, 1999 WL 965593 (N.D. Ill. 1999) ...............................................24

*Gomez v. Ill. State Bd. of Educ.*,
    117 F.R.D. 394 (N.D. Ill. 1987) .......................................................................21

*Haroco, Inc. v. American Nat. Bank & Trust Co.*,
    121 F.R.D. 664 (N.D.Ill.1988) ........................................................................17

*Hardin v. Harshbarger*,
    814 F. Supp. 703 (N.D. Ill. 1993) .....................................................................11

*Haynes v. Logan Furniture*,
    503 F.2d 1161 (7th Cir. 1974) .........................................................................25

*Hendricks-Robinson v. Excel Corp.*,
    164 F.R.D. 667 (C.D. Ill. 1996)12 ....................................................................12

*Hinman v. M and M Rental Cen., Inc.*,
    545 F. Supp. 2d 802 (N.D. Ill. 2008) ................................................11, 15, 18, 25

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002) .........................................................................25

*In re Neopharm, Inc. Securities Litig.*
    225 F.R.D. 563 (N.D. Ill. 2004) .......................................................................11

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998) ......................................................................15, 18

*Kleiner v. First Nat. Bank*,
    97 F.R.D. 683 (N.D. Ga. 1983) .......................................................................17

*Langendorf v. Skinnygirl Cocktails, LLC*,
    306 F.R.D 574 (N.D. Ill. 2014) .......................................................................15

*Lemon v. Int'l Union of Operating Eng's.*,
    216 F.3d 577 (7th Cir. 2000) .........................................................................23

*Maxwell v. Arrow Financial Services, LLC*,
  No. 03 C 1995, 2004 WL 719278 (N.D. Ill. 2004) ..................................................20

*McCabe v. Crawford & Co.*,
  210 F.R.D. 631 (N.D. Ill. 2002) ................................................................................11

*Mitchem v. Illinois Collection Serv., Inc.*,
  271 F.R.D. 617 (N.D. Ill. 2011) ................................................................................13

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) ....................................................................................14

*Murray v. GMAC Mortg. Corp.*,
  434 F.3d 948 (7th Cir. 2006) ....................................................................................25

*Pella Corp. v. Saltzman*,
  606 F.3d 391, 394 (7th Cir. 2010) ............................................................................23

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ..................................................................................................26

*Phillips v. Waukegan Housing Authority*
  331 F.R.D. 341 (N.D. Ill. 2019) ................................................................................15

*Radamanovich v. Combined Ins. Co. of Am.*,
  216 F.R.D. 424 (N.D. Ill. 2003) ................................................................................23

*Randolph v. Crown Asset Mgmt., LLC*,
  254 F.R.D. 513 (N.D. Ill. 2008) ................................................................................15

*Retired Chicago Police Ass'n v. City of Chicago*,
  7 F.3d 584 (7th Cir. 1993) .................................................................................. 19-20

*Riordan v. Smith Barney*,
  113 F.R.D. 60, 62 (N.D. Ill. 1986) ............................................................................12

*Rosario v. Livaditis*,
  963 F.2d 1013 (7th Cir. 1992) ..................................................................................18

*Sebo v. Rubenstein*,
  188 F.R.D. 310, 316 (N.D. Ill. 1999) ........................................................................20

*Smith v. Nike Retail Servs., Inc.*,
  234 F.R.D. 648 (N.D. Ill. 2006) ......................................................................... 12, 18-19

*Spano v. The Boeing Co.*,

633 F.3d 574, 586-87 (7th Cir. 2011) ...................................................................20

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750, 757 (7th Cir. 2014) ...................................................................15

*Swanson v. American Consumer Indus., Inc.*,
    415 F.2d 1326, 1333 & n. 9 (7th Cir. 1969) .......................................................12

*Tenants Associated for a Better Spaulding v. United States Dep't of Housing and Urban Dev.*,
    97 F.R.D. 726, 729 (N.D. Ill. 1983)..................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).................................................................................. 14-15

*Wilkins v. Just Energy Grp., Inc.*,
    308 F.R.D. 170, 184 (N.D. Ill. 2015)............................................................ 20-21

*Wilson v. City of Evanston, Illinois*,
    2017 WL 3730817 (N.D. Ill. Aug. 30, 2017) .......................................................11

## **Statutes**

735 ILCS 5/2-801 .....................................................................................11

815 ILCS 505/2..................................................................................... *passim*

Mich. Comp. Laws § 445.901.................................................................... *passim*

Fed. R. Civ. P. 23 .................................................................................. *passim*

## **Other Authorities**

Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure (2d ed. 1987) ..............13

William Rubenstein, 5 *Newberg on Class Actions*, §11.25 (5th Ed. 2013)...................................22

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION FOR CLASS CERTIFICATION

I.      **INTRODUCTION**

This litigation is about Defendant Jackson National Life Insurance Company's ("Jackson" or "Defendant") wrongful assessment of surrender charges ("Surrender Charges") against the value of the annuity contracts of its customers, many of whom were senior citizens who had entrusted Jackson to safely handle funds they had set aside for retirement. Such uniform conduct constituted a breach of Jackson's annuity contracts with its customers, including Plaintiff and the members of the putative Class and Subclass defined herein. Under the terms of such contracts, Plaintiff and the Class members paid premiums to Jackson National in exchange for Jackson's agreement to pay them a guaranteed interest rate on such premiums and thereby cause the value of their annuities to increase for a period of years or decades. Jackson also agreed that, upon reaching the date when those annuities fully matured (the "Maturity Date"), typically around the age of retirement, Jackson would automatically begin to make monthly annuity payments to annuity holders like Plaintiff and the Class members based on the value of their accounts. At least that's what was *supposed* to happen.

As will be discussed in more detail below, Defendant at all relevant times had a policy of sending a letter ("Surrender Letter") to its annuity holders shortly before their respective Maturity Dates informing them that their Maturity Dates were forthcoming and that they needed to inform Jackson as to how they wanted to receive funds from their annuity account. However, the Surrender Letter that Defendant sent annuity holders was deceptive because it suggested that customers had to actually make an affirmative choice before receiving their money, even though they had already contracted to receive it *automatically* as monthly payments after the Maturity Date. In reality, annuity holders did *not* need to take action to obtain the benefits of their contracts.

- 1 -

Instead the deceptive Surrender Letter sent by Defendant encouraged customers to take early withdrawals from their annuity just prior to their Maturity Date. If annuity holders made such early withdrawals, Defendant then uniformly assessed them a "Surrender Charge." Adding insult to injury, such a "Surrender Charge" was never contemplated by the terms of the customers' annuity contracts, and Defendant's assessment of such "Surrender Charges" constituted a breach of those contracts.

In January 2017, Plaintiff Nofsinger received the deceptive Surrender Letter from Defendant, then subsequently withdrew funds in a manner suggested by Jackson, only to be assessed a Surrender Charge of thousands of dollars. As a result Plaintiff commenced this action on May 4, 2017, on her own behalf and on behalf of similarly situated individuals. In response to Jackson's uniform actions emanating from its headquarters in Michigan with respect to Surrender Charges and the deceptive Surrender Letter, Plaintiff's operative Amended Complaint brings claims against Jackson on behalf of a nationwide Class of individuals for (1) Breach of Contract; (2) Conversion; (3) violations of the Michigan Consumers Protection Act, Mich. Comp. Laws § 445.901, et seq. ("MCPA"); and with respect to Illinois consumers like Plaintiff (4) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("ICFA").[1]

As will be discussed herein, the facts that have been produced and clarified in the nearly two years of discovery in this case demonstrate that this case is a prime candidate for certification under Fed. R. Civ. P. 23. The thousands of members of the proposed Class are current and former customers of Defendant, and thus easily known and ascertainable. Additionally, Defendant's

---

[1] Plaintiff notes that the Class and Subclass she seeks to certify here are different than those brought in her Amended Complaint and, as a result, would seek leave to amend her complaint if and when the Court finds it necessary and appropriate. *Savanna Grp., Inc. v. Trynex, Inc.*, No. 10-CV-7995, 2013 WL 66181, at *1 (N.D. Ill. Jan. 4, 2013)

deceptive and unlawful conduct was consistent, systematic, and done pursuant to corporate policies; *all* customers, and thus all putative Class members, received the same deceptive letter as a matter of policy, which means a ruling as to the legality of the letter under the consumer fraud statutes at issue in this litigation can be determined consistently and efficiently for all such Class members in a single ruling. Additionally, none of the proposed Class members' contracts permitted the assessment of any "Surrender Charge" and, as a result, a ruling as to the legality of the assessment of such charges can also be determined consistently and efficiently for all such Class members in a single ruling. While Defendant will undoubtedly assert defenses to Plaintiff's claims on the merits – although it has not moved for dismissal under Rule 12, nor has it moved for summary judgment – the myriad issues that are common to the putative Class and Subclass can be easily addressed and answered by the Court in one fell swoop. As explained below, the elements under Rule 23 have been established and the putative Class and Subclass should be certified.

## II.      FACTS SPECIFIC TO PLAINTIFF

Plaintiff, a career public school teacher in Illinois, purchased her annuity contract from Defendant in 1991, and for 13 years paid premiums to Jackson – never missing a payment – by having amounts regularly deducted from her paychecks. (Dkt. 70, First Amended Complaint, "FAC," at ¶¶ 19-20; Def.'s Resps. to Pl.'s First Reqs. for Admis. at RFA 3, attached as <u>Exhibit A</u> to the Declaration of David L. Gerbie ("Gerbie Decl.") filed contemporaneously herewith). Like all other annuity holders, when Plaintiff purchased her annuity, she set a specific Maturity Date and understood that, upon passage of the Maturity Date, she would automatically begin to receive

monthly payments from Jackson based on the value of her policy. (*See* Transcript of October 9, 2018 Deposition of Cynthia Campbell, attached as <u>Exhibit B</u> to Gerbie Decl., at 63:8-15).[2]

Just prior to Plaintiff's Maturity Date (when Jackson was obligated to begin making monthly annuity payments), Jackson instead sent Plaintiff a Surrender Letter asking for her to take action and choose how to receive money from her annuity. (Surrender Letter, attached as <u>Exhibit C</u> to Gerbie Decl.). In reality, no such decision was required because Jackson was already obligated to begin making the annuity payments under its contract with Plaintiff. (Ex. B to Gerbie Decl., at 123:18-21). After Plaintiff responded to the Surrender Letter in accordance with Jackson's instructions, she was assessed a Surrender Charge against the value of her annuity. (Dkt. 70, FAC, at 47; Disbursement Letter, attached as <u>Exhibit D</u> to Gerbie Decl.). While Jackson was obligated to pay her $103,962.96, she instead received a much lower amount, $86,055.28, and was informed by Jackson that she had been assessed a Surrender Charge of $17,887.68. (Ex. D to Gerbie Decl.). She was given no reason why. As explained in more detail below, the Surrender Letter deceptively and unfairly encourages Class members to elect to surrender their annuity policies just before their Maturity Date and obtain their money in a lump sum, which then serves as a pretext for Jackson to assess them Surrender Charges, resulting in annuity holders receiving significantly less money than if they had taken no action. (Ex. B to Gerbie Decl., at 116:7-16).

## III.       ARGUMENT

### A.       The Underlying Misconduct: Surrender Charges And The Class

The annuity contract purchased by the Plaintiff does not mention or permit the imposition of Surrender Charges—something that Defendant concedes. (Ex. A to Gerbie Decl., at RFA 5; Ex.

---

[2] Cynthia Campbell was designated by Jackson as a 30(b)(6) witness testifying on behalf of the company. She was deposed first on Oct. 8, 2018 (Ex. B to Gerbie Decl.) and again on Sept. 26, 2019 (Ex. L to Gerbie Decl.).

B to Gerbie Decl., at 36:8-18, 38:22-39:1; *see generally* Pl.'s Annuity Contract, attached as <u>Exhibit E</u> to Gerbie Decl.). In this litigation, Jackson's explanation for the Surrender Charge has evolved, but Jackson's current position seems to be that the amounts withheld from Plaintiff were not "Surrender Charges," but instead reflected a "difference in values."[3] While this may be a very convenient position for Defendant to take, it is not supported by the facts and the trove of documents produced in discovery, including: Jackson's internal account documents[4]; itemized disbursement letters Jackson sent to annuity holders after disbursing their funds[5]; Jackson's customer service representative account notes for Plaintiff[6]; and Jackson's written policies and procedures.[7] All of the foregoing specifically identify the amounts withheld from Plaintiff and members of the Class as "Surrender Charges." In fact, ███████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████ (Ex. I to Gerbie Decl., at DEF 711).

An assessment of Jackson's handling of Subclass members who have contracts substantively identical to Plaintiff's annuity contract – i.e., "Dual Fund Annuities" (or "DFAs") – reveals that Jackson has, according to its own records, assessed Surrender Charges against over

---

[3] It bears noting that Defendant's position on Surrender Charges has repeatedly changed, as Defendant has struggled to come up with an explanation for the Surrender Charges at issue. *Compare* Dkt. 18, Defendant's Original Answer, at 5 ("Jackson Life admits that an early withdrawal penalty of 'surrender charge' is contemplated by many annuity contracts, including Plaintiff's contract with Jackson Life"), *with* Ex. B to Gerbie Decl., at 36:3-12 ("[dual fund annuity] "does not have surrender charges[.]"); *with* Defendant's Internal Account Notes, attached as <u>Exhibit F</u> to Gerbie Decl., at DEF064 (████████████████████████ ████████).

[4] DEF123, attached as <u>Exhibit G</u> to Gerbie Decl., is a screenshot of Jackson's internal systems showing that ████████████████████████████████.

[5] *See* Ex. D to Gerbie Decl.; *see also* Disbursement Letters produced by Defendant as DEF955, DEF956, DEF959, and DEF962, attached as <u>Group Exhibit H</u> to Gerbie Decl.

[6] Ex. C to Gerbie Decl.

[7] DEF711 attached as <u>Exhibit I</u> to Gerbie Decl. is an internal Jackson reference sheet used by customer service representatives to answer questions about ██████████████████████████ ████████.

- 5 -

1,000 DFA holders despite there being no provision in the DFA contract granting Jackson permission to do so. (Ex. B to Gerbie Decl., at 36:8-18, 38:22-39:1; *see also* list of 1041 DFA holders identified by Jackson as having been assessed Surrender Charges, attached as <u>Exhibit J</u> to Gerbie Decl. at DEF1047). Defendant admits as such. (Ex. B to Gerbie Decl., at 36:10-11, 38:22-24; *see also* Ex. A to Gerbie Decl. at RFA 5). By assessing Surrender Charges that were not permitted under the DFAs, Defendant has uniformly breached its contracts with Plaintiff and the Subclass members (Dkt. 70, FAC, at ¶ 74). Further, while Jackson sells many different annuities, the differences among those contracts do not defeat class certification for the broader Class, as the differences are immaterial as to the propriety of Jackson's assessment of Surrender Charges.

This case is ripe for certification because the answer to any questions about Defendant's liability based on either the sending of the Surrender Letter or the imposition of any Surrender Charge would apply uniformly across the Class and Subclass. That is, however Defendant will want to defend this case at summary judgment or at trial, the answer as to liability to the putative Class and Subclass can be determined in one fell swoop. In its effort to oppose certification, Defendant will likely argue that (1) Plaintiff cannot represent individuals with different annuity policies than the one she purchased; and (2) the claims require individual inquiry because the Surrender Charges were not actually "Surrender Charges," but instead such individuals received the value they were owed which was wrongly labeled a Surrender Charge. Effectively, its argument is "if it looks like a duck and quacks like a duck, it's a piano." This defense is without merit, as Defendant's policy seems to have been standardized: to assess Surrender Charges against all annuity holders *unless* they reached their Maturity Date, something that the deceptive Surrender Letters helped facilitate. (*See* Gerbie Decl., Exs. B, C, D, E, and I at DEF711).

**B.     The Underlying Misconduct: Surrender Letters**

All members of the Class and Subclass that Plaintiff seeks to certify received a deceptive and unfair Surrender Letter from Jackson that deceptively encouraged them to take money from their annuity prior to the Maturity Date and which resulted in the assessment of a Surrender Charge. Such a Class and Subclass are clearly certifiable, as Jackson sent a boilerplate Surrender Letter to *all* of its annuity holders in advance of their respective upcoming Maturity Dates. (*See* Def.'s Suppl. Disc. Resps., attached as Exhibit K to Gerbie Decl., at Issue 3; Transcript of Sept. 26, 2018 Deposition of Cynthia Campbell, attached as Exhibit L to Gerbie Decl., at 41:6-25; Maturity Date Fact Sheet: Service Center Edition, attached as Exhibit M to Gerbie Decl., at DEF705). As a result, the common question of whether such a letter was unlawfully deceptive – a question that the Court need not address at this stage of the litigation – would have a common answer for all putative Class members.

1.     *The Surrender Letters Are Deceptive and Unfair*

According to the terms of the annuity contracts purchased by Plaintiff and other members of the Class, the premiums paid by such consumers accrued interest. (Ex. L to Gerbie Decl., at 31:8-18). At the Maturity Dates of the contracts purchased by Plaintiff and the members of the Class, Defendant was obligated to begin making annuity payments to them based on the value of their annuity. (Ex. L to Gerbie Decl., at 43:19-44:8). However, this would result in Jackson receiving less revenue for itself than if it were somehow able to convince consumers to take money from their annuity contracts *prior* to the Maturity Dates of their annuities. So, rather than automatically beginning to make annuity payments based on the value of their contracts at their bargained-for Maturity Dates as it was obligated to do, Jackson encouraged annuity holders to withdraw funds from their annuities immediately *prior* to their Maturity Dates. Jackson accomplished this by automatically sending a deceptive "Surrender Letter" to annuity holders as

their Maturity Dates approached, specifically sending such letters sixty days prior to an annuity's Maturity Date, and resending such letters thirty days prior to again attempt to induce customers to take action under the guise that it was their "final" opportunity to do so. (Ex. L to Gerbie Decl., at 41:13-25). The Surrender Letter is deceptive and unfair in multiple ways.

First, the letter intentionally leads Class members to believe that they need to take action in order to receive the money Jackson is already obligated to automatically begin paying them upon their Maturity Date. (Dkt. 70, FAC, at ¶ 30; Ex. B to Gerbie Decl., at 121:3-11). Next, Jackson's misrepresentation makes annuity holders believe that they need to "instruct Jackson Not to Reset" their Maturity Dates, and that absent such a selection, Jackson will automatically reset such annuity holders' Maturity Dates. (Ex. C to Gerbie Decl. at "Option 2"). In reality, Jackson is not permitted to unilaterally change the Maturity Dates of consumers' annuities. (Ex. E to Gerbie Decl., at 10 "General Information"). This statement creates the false impression that consumers need to affirmatively respond to the Surrender Letter or else Jackson would take unilateral action and reset their Maturity Date.

Additionally, as if Jackson's veiled threats to move annuity holders' Maturity Date absent their response weren't enough to get them to take action *prior* to their Maturity Dates, Jackson specifically tells consumers in bold to: "**Please respond to this letter so that we receive your response no later than the current Maturity Date or Income Date[.]**" (Ex. C to Gerbie Decl., at 1). Again, this language is deceptive and unfair because it misrepresents annuity holders' rights under their contracts and leads them to believe that they "must" take action and "respond" to the letter. Jackson is not only leading consumers to believe that they must take action and respond, it is also asking that they do so by selecting one of the options listed in the Surrender Letter specifically *prior* to their Maturity Date. (*Id.*) Further, and perhaps most importantly, the Surrender

Letter and the options presented therein are entirely silent as to the existence of Surrender Charges or other penalties which could result from taking action *prior* to their Maturity Dates. Specifically, Option #3, the "Lump Sum Payout" option, is deceptive and unfair to annuity holders because it indicates that this option will result in the annuity holder receiving a "Full Liquidation" of the "value of [their] contract" and omits the fact that making such a selection will instead result in the assessment of an unauthorized Surrender Charge. (*See* Ex. C to Gerbie Decl., at 2).

2. *The Surrender Letters Are Particularly Deceptive And Unfair To Dual Fund Annuity Holders*

While the Surrender Letter is deceptive and unfair with respect to all annuity holders, it is particularly so for DFA holders for two reasons. First, under the terms of the Dual Fund Annuity contract, interest paid to DFA holders accrued at two different values – the "Accumulated Value" and the "Cash Surrender Value." (Ex. B to Gerbie Decl., at 19:22-20:13; *See also* Ex. E to Gerbie Decl.). After many years of earning interest, and as DFA holders approach their Maturity Date, the Accumulated Value is significantly higher than the Cash Surrender Value. (Ex. B to Gerbie Decl., at 19:20-20:15). The Surrender Letter lists four options for how annuity holders can begin to take money from their annuity. However, the four options listed in the Surrender Letter are completely different than the options available to DFA holders under the actual terms of their DFA contracts. (*Compare* Ex. C to Gerbie Decl. *with* Ex. E to Gerbie Decl., at 5). Jackson deceived DFA holders by misrepresenting the options available to them under their contracts and instead presenting them with four completely different options than those that were actually available under their DFA contracts and omitting that they were different options.

The "dual fund" nature of the DFA makes option #3, the "Lump Sum Payout" option, particularly deceptive and unfair to DFA holders because it indicates that this option will result in the DFA holder receiving a "Full Liquidation" of the "value of [their] contract." (*See* Ex. C to

- 9 -

Gerbie Decl., at 2). This misrepresentation is deceptive and unfair because the DFA, according to Jackson, has not one value, but "two different buckets of values." (Ex. B to Gerbie Decl., at 116:7-10). The Surrender Letter sent to DFA holders is silent as to these two different values (a material omission) and consumers reasonably believe that such value is the "Accumulation Value." DFA holders reasonably believe this because *every one* of the four options DFA holders could have selected under the DFA contract, including the automatic Default Option, would have resulted in the DFA holder receiving the entire Accumulated Value of their DFA, rather than the much smaller "Cash Surrender Value." Moreover, there as explained above, Defendant deceptively presents DFA holders with a "Lump Sum Option" even though no such "Option" exists under the terms of the DFA contract. (Ex. E to Gerbie Decl. at 5 "Payment Options").

In short, Plaintiff and the members of the putative Class and Subclass entered into contracts with Defendant, they paid their premiums on time, and for many years trusted Jackson to fairly administer their annuity contracts. Instead, on the eve of such annuity holders' long-awaited Maturity Dates – the date Jackson was obligated to begin making monthly annuity payments to them based on the value of such annuities – Jackson uniformly sent deceptive and unfair Surrender Letters to them - on *multiple* occasions - in order to try and convince them to withdraw funds from their annuities early and thereby create a pretext for assessing Surrender Charges against them or otherwise paying them less than what they had often waited decades to receive. Indeed, it appears as though Jackson intended for this outcome, as its internal documents show that only in the case of someone actually reaching their Maturity Date, in spite of Jackson's multiple attempts to ensure they do not reach such Maturity Date, would Jackson "waive" Surrender Charges.[8][9] As a result,

---

[8] Ex. I to Gerbie Decl., at DEF711 ("**Q. Will charges be waived…**")(emphasis in original).
[9] LID refers to "last income date" which is synonymous with Maturity Date (Ex. L to Gerbie Decl., at 13:21-14:1).

all customers who received this deceptive Surrender Letter and who ultimately incurred a Surrender Charge assessed by Defendant, should be certified as a Class, and those who purchased the contract identical to the one purchased by Plaintiff should be certified as a Subclass, so that they can collectively seek redress for Defendant's conduct. Such certification is eminently reasonable and appropriate under Rule 23.

## IV.      THE PROPOSED CLASS AND SUBCLASS

Plaintiff seeks to certify the following Class and Subclass under Fed. R. Civ. P. 23:

**The Class:** All individuals who entered into an annuity contract with Defendant, and who from 2012 through the present were sent the Surrender Letter and subsequently assessed a charge by Defendant identified as a "Surrender Charge" against the value of their annuity according to Defendant's records.

**The Dual Fund Subclass (the "Subclass"):** All individuals who entered into a Dual Fund Annuity contract with Defendant and who from September 2012 through the present were sent the Surrender Letter and subsequently assessed a charge by Defendant identified as a "Surrender Charge" against the value of their Dual Fund Annuity according to Defendant's records.

## V.      THE PROPOSED CLASS AND SUBCLASS ARE CERTIFIABLE UNDER FEDERAL RULE 23(a)

"To be certified, a proposed class must satisfy the four requirements of Rule 23(a): '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.'" In deciding a motion for class certification, courts take the well-pled allegations of the complaint as true and do not inquire into the merits of the case. *In re Neopharm, Inc. Securities Litigation,* 225 F.R.D. 563, 565 (N.D. Ill. 2004) (citing *Hardin v. Harshbarger,* 814 F. Supp. 703, 706 (N.D. Ill. 1993); *Wilson v. City of Evanston, Illinois,* 2017 WL 3730817, at *4

(N.D. Ill. Aug. 30, 2017) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)). As explained further below, such factors are satisfied here.

### A. Defendant Does Not Dispute The Numerosity Of The Class And Subclass

The first step in certifying a class is a showing that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); 735 ILCS 5/2-801(1). "Although there is no bright-line test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)." *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 805-806 (N.D. Ill. 2008); *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) (stating that a class of forty or more is sufficiently numerous). To satisfy this requirement a "plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog and Cat Food Co.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009); *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). "When analyzing whether joinder is impracticable, factors such as judicial economy, geographic diversity of class members, and the ability of class members to institute individual lawsuits should also be considered." *Tenants Associated for a Better Spaulding v. United States Dep't of Housing and Urban Dev.*, 97 F.R.D. 726, 729 (N.D. Ill. 1983).

Most notably, Defendant does not contest that Plaintiff's claims satisfy the numerosity requirement of even the smaller Subclass here. (Dkt. 90, Transcript of Proceedings, June 12, 2018, Mr. Schutte, at 9:17) ("we're not contesting numerosity.") Indeed, the record shows that Defendant sent the Surrender Letter to all of its customers, and there are thousands of individuals who entered into annuity contracts with Defendant who were both sent the Surrender Letter and assessed a Surrender Charge—an amount that more than satisfies the numerosity requirement. (Ex. H to Gerbie Decl., at 41:6-25). *See, e.g.*, *Swanson v. American Consumer Indus., Inc.*, 415 F.2d 1326,

1333 & n. 9 (7th Cir. 1969) (40 class members satisfied numerosity); *Hendricks-Robinson v. Excel Corp.*, 164 F.R.D. 667, 671 (C.D. Ill. 1996) (38 class members satisfied numerosity); *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) (certifying a class of 29 members, and noting that courts have certified classes of as few as 10 members). In fact, Defendant has already produced in discovery a list identifying every individual who is a member of the Subclass. That list identifies 1041 members of the Subclass, which by itself easily satisfies the numerosity requirement. Judicial economy would be served by the consolidation of the thousands of potential lawsuits into one action, and so the numerosity requirement for class certification is easily met for the proposed Class and Subclass here.

## B. The Class And Subclass Are Easily Ascertainable Based On Defendant's Records

Although it is not explicitly required under Rule 23(a), some courts require that a proposed class be ascertainable. A class is ascertainable if "its members can be ascertained by reference to objective criteria[.]" *Mitchem v. Illinois Collection Serv., Inc.*, 271 F.R.D. 617, 619 (N.D. Ill. 2011) (internal citations omitted); 7A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1760, at 121 (2d ed. 1987) (noting that the class must be defined in a way that is administratively feasible for a court to determine whether a particular individual is a member). However, to meet the ascertainability requirement the Court "need not ascertain 'absent class members' actual identities' . . . [r]ather, 'it is enough that the class be ascertain*able*,' with class members to be identified during a claims administration process[.]" *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 245 (N.D. Ill. 2014) (citing *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012)) (emphasis in original).

Here, the proposed members of the Class are easily ascertainable using Defendant's records. (Transcript of the Oct. 23, 2018 Deposition of Robert P. Schultz, attached as Exhibit N to

Gerbie Decl., at 38:13-23). Defendant has maintained relationships with its annuity holders for years, and in many cases decades. Defendant has communicated with the members of the Class and Subclass through written and electronic means and has contact information for all of its customers. (*See, e.g.,* Group Ex. H to Gerbie Decl.). Crucially, there is no question as to the ascertainability as to the Subclass because Defendant has already produced such a class list in discovery. (Ex. J to Gerbie Decl.). The actual class list for the Subclass already exists because, after several contested discovery hearings before Magistrate Weisman, Defendant was ordered to produce a list of all Dual Fund holders who had been assessed a Surrender Charge according to Defendant's records, and we know that every annuity holder is automatically sent a Surrender Letter. (Dkt. 80; Ex. J to Gerbie Decl.; Ex. M to Gerbie Decl.). This demonstrates that the broader Class who also received the Surrender Letter and were also assessed a Surrender Charge is also easily ascertainable from Defendant's records. (Ex. N to Gerbie Decl., at 39:12-40:20).

Simply put, all members of the Class and Subclass are current and former customers of Defendant and so contact information for such individuals is readily available in Defendant's records. (Ex. L to Gerbie Decl., at 41:13-25; *see* Group Ex. H to Gerbie Decl.). Because membership in the proposed Class is already determined for every Class Member based on Defendant's records, and because a class list with respect to the Subclass has already been provided by Defendant, the proposed Class and Subclass are undoubtedly ascertainable. *See Birchmeier*, 302 F.R.D. at 248; *see also Boundas*, 280 F.R.D. at 418 (finding that a proposed class is ascertainable even if the actual "names and addresses" of the class members are not identified); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 661 (7th Cir. 2015), *cert. denied*, No. 15-549, 2016 WL 763259 (U.S. Feb. 29, 2016) (noting that ascertainability focuses on the "adequacy of the class definition itself" and not on the "difficulty [in] identify[ing] particular members of the class").

- 14 -

### C. Commonality: Defendant's Uniform Conduct Affected All Class Members

The second requirement of Rule 23(a)(2) is met where "there are questions of fact or law common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, the class representative must demonstrate that members of the class "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011). However, "Plaintiffs need only show that there is at least one question of law or fact common to the class to satisfy the commonality requirement." *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996) (internal quotations omitted). Commonality requires that the class members' claims "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. In *Dukes*, the Supreme Court concluded that what is most relevant is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.*

Commonality is often present where defendants have "engaged in standardized conduct toward members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Hinman*, 545 F. Supp. 2d at 806. In addition, breach of contract claims may be readily certifiable, as "claims that arise out of standard documents present a classic case for treatment as a class action." *Arenson*, 164 F.R.D. at 664 (internal quotations omitted); *see also Phillips v. Waukegan Housing Authority,* 331 F.R.D. 341 (N.D. Ill. 2019). Moreover, courts that evaluate class certification under state consumer protection statutes have regularly found commonality in questions that turn on a defendant's conduct. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750,

757 (7th Cir. 2014); *Randolph v. Crown Asset Management, LLC*, 254 F.R.D. 513, 518 (N.D. Ill. 2008); *Langendorf v. Skinnygirl Cocktails, LLC*, 306 F.R.D 574, 580 (N.D. Ill. 2014); *Flynn v. FCA US LLC*, 327 F.R.D. 206, 223 (S.D. Ill. 2018). In this case, there is a very high degree of standardized, if not identical, conduct between Defendant and the Class and Subclass with respect to Defendant's sending of Surrender Letters, Defendant's assessment of Surrender Charges, and Defendant's deceptive and unfair acts under the MCPA and ICFA.[10]

In *Dix v. Am. Bankers Life Assur. Co. of Fla.*, 429 Mich. 410, 418, 415 N.W.2d 206, 210 (1987), the Supreme Court of Michigan reversed denial of class certification in a very similar case brought on behalf of consumers who purchased tax sheltered annuities and subsequently alleged that the defendant had violated the MCPA through material misrepresentations and omissions. Like the Class here, in *Dix*, the plaintiffs alleged a common scheme of misrepresentation and brought claims under consumer protection statutes. The Michigan Supreme Court found that allegations and evidence related to a common scheme of misrepresentation were sufficient to demonstrate a common question of law or fact with respect to the class. *Id.* at 416 ("All the plaintiffs allege a common scheme of misrepresentation, and all allege the same fraud and Consumer Protection Act claims. It thus appears that the common question of law or fact criterion is satisfied[.]") The court also emphasized that the MCPA was enacted to provide an enlarged remedy for consumers who are "mulcted" by deceptive business practices and that it should be

---

[10] To the extent the Court is disinclined to certify any nationwide class in light of *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S.Ct. 1773 (2017), Plaintiff notes that the Seventh Circuit appears to be on the cusp of reversing the current trend in this District of refusing to allow nationwide class actions. *See Florence Mussat v. Iqvia, Inc., et al,* No. 19-cv-1204 (7th Cir. 2019). Oral argument in that case was heard on September 27, 2019 and the case has been taken under advisement. Plaintiff would ask that the Court defer ruling on this Motion until the Seventh Circuit issues a ruling in *Florence*. Alternatively, to the extent the Court is not inclined to defer ruling until after the Seventh Circuit issues its ruling in *Florence*, and is also not inclined to certify a national class, the Court could nevertheless certify an Illinois-only Class and Subclass—that is, the same Class and Subclass defined herein, but for Illinois residents only.

construed liberally to broaden the consumers' remedy, especially in situations involving consumer frauds which affect a large number of persons. *Id.* The same result is required here where Jackson used deceptive and unfair omissions and material misrepresentations in order to convince annuity holders to withdraw money from their annuities early and use such withdrawals as a justification for assessing them a Surrender Charge.

The common answers that can be generated through class treatment of the Subclass in particular are numerous and cannot reasonably be disputed, as they all arise out of "standard documents." Claims arising out of standard documents present a "classic case for treatment as a class action." *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 664 (N.D. Ill. 1996); *Citing* (*Haroco, Inc. v. American Nat. Bank & Trust Co.,* 121 F.R.D. 664, 669 (N.D.Ill.1988) (quoting *Kleiner v. First Nat. Bank,* 97 F.R.D. 683, 692 (N.D. Ga. 1983)). First, all Subclass members entered into materially identical, boilerplate Dual Fund Annuity contracts with Defendant. (Ex. L to Gerbie Decl., at 35:17-36:18). Second, all received identical, automatically-sent Surrender Letters which, as discussed above, were deceptive and unfair in that they encouraged consumers to withdraw money from their annuity just prior to their Maturity Dates. (Ex. L to Gerbie Decl., at 41:23-25; *see also* section III(B)(1) *supra*). Importantly, these Surrender Letters were generated automatically by Defendant's computer system and were not individually tailored to each policyholder—i.e. they were form letters. (Ex. L to Gerbie Decl., at 41:13-25; Ex. K, to Gerbie Decl., Issue 3 at 2; Ex. I to Gerbie Decl., at DEF715; Ex. M to Gerbie Decl.). Finally, all members of the Subclass were assessed charges identified to them, and internally at Jackson, as "Surrender Charges." (*See* Group Ex. H to Gerbie Decl.; Ex. J to Gerbie Decl., at column 8).

Here, there is also a very high degree of commonality among the putative members of the Class and Subclass because all such individuals entered into boilerplate annuity contracts with

Defendant which did not allow the assessment of Surrender Charges. (Ex. B to Gerbie Decl., at 36:8-18, 38:22-39:1). All members of the Class and the Subclass were assessed a Surrender Charge as a matter of policy. (Ex. I to Gerbie Decl., at DEF711) ██████████████████████ ██████████████████████████████████████ Whether or not such Surrender Charges were permitted under such contracts will ultimately be an answer that can be decided on a Class basis.

The common questions that can be answered through class treatment of the Class and Subclass include at least the following: (1) whether Surrender Charges are permitted under the terms of the contracts (as to the Class) or the DFA contracts (as to the Subclass) or were a breach of such contracts; (2) whether Defendant's conduct with respect to sending the Surrender Letter was deceptive and unfair; and (3) whether Defendant should be enjoined from sending the Surrender Letter to Class and Subclass members. Regardless of how the Court ultimately answers these questions – questions which need not be answered right now – certification of the Class and Subclass will result in these questions being efficiently answered in one fell swoop in a manner that is consistent and binding on all Class members.

Plaintiff need only establish a "single common question" to satisfy Rule 23(a)(2), and that requirement is plainly met here. *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018) (citation omitted). The sheer number and significance of the common questions that exist between Plaintiff and the members of the Class, and particularly the Subclass, are more than sufficient to meet the commonality requirement.

### D. Plaintiff's Claims Are Typical, As They All Arise From Defendant's Singular Course of Conduct

To satisfy the typicality requirement, Plaintiff must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (internal quotation marks and citation omitted); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *Hinman*, 545 F. Supp. 2d at 806. The typicality requirement may be satisfied even if there are factual distinctions; typicality does not require claims to be "identical" and is generally "liberally construed." *Gasper v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996). In other words, "individual claims may feature some factual variations as long as they 'have the same essential characteristics.'" *Beaton*, 907 F.3d at 1026; *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983); *Smith Nike Retail Services, Inc.*, 234 F.R.D. 648, 660 (N.D. Ill. 2006). Defendant's conduct in sending the Surrender Letter to Plaintiff was typical of Defendant's conduct vis-à-vis the Class, as every single member of the Class was sent the Surrender Letter, which forms the very basis of Plaintiff's claims under §§ 445.903(1)(n) and (1)(s) of the MCPA, as well as the ICFA (for any potential subclass of Illinois individuals to the extent the Court is not inclined to certify a larger, national class). Thus, the legal claims, as well as the factual basis for such legal claims, are not just typical, but are *identical* for Plaintiff and all members of the Class and Dual Fund Subclass.

Additionally, Plaintiff and the members of the Class all entered into annuity contracts with Defendant – and, in the case of the Dual Fund Subclass members, into materially identical DFAs with Defendant – were uniformly sent the same the deceptive and unfair Surrender Letter encouraging them to withdraw funds from their annuity early, and then ultimately assessed Surrender Charges in breach of such DFA contracts. (Ex. E to Gerbie Decl.; Ex. B to Gerbie Decl., at 36:8-18, 38:17-24, 115:22-24). The evidence that the charges assessed against the Class are typical is reflected by (1) Defendant's records identifying the charges at issue as simply "Surrender

Charges"; (2) Defendant's ███████████████████████████████████ ██████████████████████████; and (3) the substantially similar terms of Jackson's boilerplate annuity contracts. (*See* Ex. J to Gerbie Decl.; Ex. I to Gerbie Decl., at DEF711). Accordingly, the typicality requirement is satisfied for both the Class and Subclass.

### E. Plaintiff And Her Counsel Will Adequately Protect Class Members' Interests

Plaintiff must also show that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of representation is composed of two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993); *see also Spano v. The Boeing Co.*, 633 F.3d 574, 586-87 (7th Cir. 2011). Rule 23(a)(4) requires that both class representative and counsel "zealously represent and advocate on behalf of the class as a whole." *Maxwell v. Arrow Financial Services, LLC*, No. 03 C 1995, 2004 WL 719278, at *5 (N.D. Ill. 2004).

To be an adequate class representative, a plaintiff must not have "antagonistic or conflicting claims" and a plaintiff must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Retired Chicago Police Ass'n*, 7 F.3d at 598; *Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999). To demonstrate counsel's adequacy, courts consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions . . . ; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g); *Gammon v. GC Servs. Ltd. P'ship*, 162 F.R.D. 313, 317 (N.D. Ill. 1995).

In this case, Plaintiff has the exact same interests as the members of the proposed Class and Subclass. Plaintiff, like the members of the Class, entered into an annuity with Defendant, received a Surrender Letter, and then incurred an unauthorized Surrender Charge. (*See* Ex. E to Gerbie Decl.). Therefore, Plaintiff does not have antagonistic nor conflicting claims with the Class and has the same interest as them, which is to ensure that Defendant ceases assessing unlawful Surrender Charges and ceases sending deceptive and unfair Surrender Letters to annuity holders.

Moreover, Plaintiff's pursuit of this matter for over two years demonstrates that she has been a zealous advocate for the Class. Indeed, she sat for a full-day deposition and responded to multiple rounds of written discovery, including the production of very sensitive documents, such as her income tax returns. (Gerbie Decl., at ¶ 21); *See, e.g., Wilkins v. Just Energy Grp., Inc.*, 308 F.R.D. 170, 184 (N.D. Ill. 2015) ("[Plaintiff] has demonstrated that she is sufficiently interested in the outcome of this case as she sat for her deposition and responded to written discovery.").

Further, proposed Class Counsel satisfy Rule 23(a)(4) and Rule 23(g). First, Plaintiff's counsel invested many hundreds of hours over the past three years investigating and litigating this matter. Plaintiff's counsel filed a Motion to Compel Discovery from Defendant, propounded multiple rounds of written discovery, reviewed thousands of pages of documents and hours of recorded phone calls, and took multiple depositions of Defendant, in both Chicago, Illinois and Lansing, Michigan. Second, Plaintiff's counsel have regularly engaged in major complex and class action litigation in the Northern District of Illinois and elsewhere and have been appointed as class counsel in numerous complex consumer class actions in this District and in other state and federal courts throughout the country. (Gerbie Decl., at ¶ 18; McGuire Law, P.C. Firm Resume, attached as <u>Exhibit O</u> to Gerbie Decl.) *See Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987) (It is persuasive evidence that proposed class counsel have been found adequate in prior

- 21 -

cases). Third, Plaintiff's counsel have extensive knowledge and experience litigating consumer fraud cases. (Gerbie Decl., at ¶ 18). Finally, Plaintiff's counsel have devoted, and will continue to devote, the resources necessary to prosecute this matter. (Gerbie Decl., at ¶ 21). Accordingly, the proposed class representative and proposed Class Counsel will adequately protect the interests of the members of the Class, thus satisfying Rule 23(a)(4) of the Federal Rules of Civil Procedure.

**VI.**     **THE PROPOSED CLASS IS CERTIFIABLE UNDER FEDERAL RULE 23(b)(3)**

A class is certifiable under Rule 23(b)(3) where "questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). To satisfy Rule 23(b)(3), it is not necessary that "every member of the class have identical damages"; it simply requires a plaintiff show that "the damages sought are the result of the class-wide *injury* that the suit alleges." *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 799, 801 (7th Cir. 2013). To satisfy Rule 23(b)(3), a plaintiff must also show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**A. The Calculation Of Damages Is Explicitly Measurable On A Class-Wide Basis**

"Damages are susceptible of class-wide measurement if there is a "single or common method that can be used to measure and quantify the damages of each class member." *Flynn v. FCA US LLC*, 327 F.R.D. 206, 224 (S.D. Ill. 2018); William Rubenstein, *Newberg on Class Actions* § 12:4 (5th Ed. 2013). Questions of individual damage calculations will not overwhelm questions common to the class if damages can be measured on a class-wide basis. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35-36 (2013). Furthermore, it is well established that the presence of

individualized damages does not render the class unsuitable for certification. *Arenson*, 164 F.R.D. at 666; *See De La Fuente*, 713 F.2d at 233.

Here, the rights of every class member *to recover* damages may be resolved in "one stroke" and are the result of a class-wide injury. Either an annuity contract allows for the imposition of Surrender Charges, or it does not. If it does not, then calculation of damages is simple using Defendant's records, as it maintains internal records which specifically itemize the Surrender Charges assessed against each annuity holder. For the Subclass, Defendant has already provided a class list which identifies such Subclass members by name and the exact amount of the Surrender Charge assessed against each individual. (Ex. J to Gerbie Decl.). In total, the records produced by Defendant show that the members of the Subclass were assessed Surrender Charges in the amount of $10,413,377.94. The existence of the Subclass list demonstrates that Defendant could produce a corresponding list for the broader Class. Therefore, Plaintiff has met her burden of providing a proposed class-wide calculation of damages that is consistent with her theory of liability (breach of contract and violations of consumer protection statutes).

**B. Common Questions Predominate Within The Class**

The predominance inquiry focuses on whether a proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. To satisfy the predominance requirement of Rule 23(b)(3), "each class member must share common questions of law or fact with the rest of the class, therefore making class-wide adjudication of the common questions efficient compared to the repetitive individual litigation of the same question." *Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 581 (7th Cir. 2000). While the common issues must predominate, they need not be exclusive. *Radamanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 435 (N.D. Ill. 2003). "Considering whether questions of law or fact common to class members

- 23 -

predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (internal quotation marks omitted). However, "a court weighing class certification must walk a balance between evaluating evidence to determine whether a common question exists and predominates, without weighing that evidence to determine whether the plaintiff class will ultimately prevail on the merits." *Bell v. PNC Bank Nat. Ass'n*, 800 F.3d 360, 377 (7th Cir. 2015).

Defendant may argue that there is an issue of proximate causation and allege that members of the proposed Class may have incurred a Surrender Charge for different reasons. However, the mere presence of individualized questions does not preclude class certification. *See e.g., Bell*, 800 F.3d at 379 ("The fact that the plaintiffs might require individualized relief or not share all questions in common does not preclude certification of a class"); *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010) (the need for individualized proof alone does not preclude class certification). Additionally, where the Class members' claims are related to the Surrender Letter, "members of a class proceeding under the [MCPA] need not individually prove reliance on the alleged misrepresentations." *Dix,* 429 Mich. at 418, 415 N.W.2d at 209.[11]

Moreover, the specific reason for which each member of the Class incurred a Surrender Charge is irrelevant because, by definition, Surrender Charges are not permitted under any of the contracts of the Class or Subclass members – particularly under the circumstances created through the sending of the Surrender Letter – and Defendant's records are specifically searchable in order to identify the assessment of Surrender Charges. (Ex. B to Gerbie Decl., at 38:12-39:1; Ex. N to

---

[11] Under § 445.903(1)(n) of the MCPA, it is illegal to engage in conduct which causes a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction. Similarly, section (s) prohibits failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

Gerbie Decl., at 38:13-23). For the Subclass members, where it is beyond dispute that the terms of their contracts were materially identical, it is clear that any questions with respect to the propriety of the Surrender Charges and the deceptiveness of the Surrender Letter would predominate over any individualized issues. (Ex. B to Gerbie Decl., at 63:13-19).

As such, the elements of a claim alleged by the members of the Class and Subclass will be based on the same class-wide proof applicable to other members within the same class. *Golon v. Ohio Savs. Bank*, 98 C 7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999) (Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, classwide basis … [since s]uch proof obviates the need to examine each class member's individual position."). Therefore, common questions of the proposed Class will predominate over any potential individualized issues.

### C. A Class Action Is The Most Efficient Way of Adjudicating The Class Members Claims And Is Superior To A Multitude Of Individual Lawsuits

Rule 23(b)(3) requires a class action to be superior to other available methods and a fair and efficient method to adjudicate the controversy. Fed. R. Civ P. 23(b)(3). To determine whether a class action is a superior method, courts often look to whether it is an "efficient use of both judicial and party resources." *Hinman,* 545 F. Supp. 2d at 807. A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. The superiority requirement is generally satisfied where class members have uniform claims governed by the same law. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002). Courts should also consider the "improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture*, 503 F.2d 1161, 1164-65 (7th Cir. 1974).

In consumer cases like this one, with thousands of putative class members, a class action is especially likely to be superior:

> Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate. Reliance on federal law avoids the complications that can plague multistate classes under state law, and society may gain from the deterrent effect of financial awards.

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006). In addition to breach of contract and conversion claims, all of the Class Members' claims are brought pursuant to the same state statute, the MCPA. As a result, this case is particularly suited for class treatment.

Further, many members of the putative Class may not have access to competent counsel willing to invest the time and resources necessary to prosecute their claims. It is therefore unlikely that, absent a class action, individuals would be able to obtain relief through individual lawsuits. As such, adjudicating the Class members' claims in a single proceeding will "save[] the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (holding that a class action is superior where it allows the plaintiffs to pool claims that would be uneconomical to litigate individually). Accordingly, a class action is the most efficient method of adjudicating this action and is superior to individual lawsuits.

## VII.  PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Finally, and as set forth in Section V(E) above, Plaintiff's counsel, McGuire Law, P.C., has been appointed as class counsel in numerous consumer class actions and will continue to "fairly and adequately represent the interests of the class" in this case. Fed. R. Civ. P. 23(g)(4). As

a result, Plaintiff respectfully requests that the Court appoint McGuire Law, P.C. as Class Counsel pursuant to Fed. R. Civ. P. 23(g).

## VIII.     <u>CONCLUSION</u>

For the reasons set forth above, the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b) are satisfied. Plaintiff respectfully requests that the Court enter an Order certifying the proposed Class and Subclass, appointing Plaintiff as Class Representative, appointing Myles McGuire, Evan M. Meyers and David L. Gerbie of McGuire Law, P.C. as Class Counsel, and awarding such additional relief as the Court deems reasonable and just.

Dated: December 20, 2019

Respectfully submitted,

BONNIE NOFSINGER, individually and on behalf of a Class and Subclass of similarly situated individuals

By: /s/ David L. Gerbie
     *One of Plaintiff's Attorneys*

Myles McGuire
Evan M. Meyers
David L. Gerbie
MCGUIRE LAW, P.C.
55 West Wacker Drive, Suite 900
Chicago, Illinois 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
dgerbie@mcgpc.com

*Counsel for Plaintiff*
*and Proposed Class Counsel*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on December 20, 2019, a copy of *Plaintiff's Motion & Memorandum in Support of Class Certification* was filed electronically with the Clerk of Court, with a copy sent by Electronic Mail to all counsel of record.

/s/David L. Gerbie