IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BONNIE NOFSINGER, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JACKSON NATIONAL LIFE INSURANCE COMPANY, a Michigan corporation,<br><br>Defendant. | No. 17-cv-03367<br><br>Judge John J. Tharp, Jr. |

### MEMORANDUM OPINION AND ORDER

Plaintiff Bonnie Nofsinger sued Jackson National Life Insurance Company ("Jackson"), on behalf of herself and all others similarly situated, for sending her an allegedly deceptive Surrender Letter regarding her dual fund annuity contract. Nofsinger alleges that Jackson's conduct, in both impermissibly changing her contract's maturity date and sending the Surrender Letter, constituted a breach of contract, conversion, and violation of the Michigan Consumer Protection Act ("MCPA") and the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). Currently before the court are Jackson's motion for partial summary judgment and Nofsinger's motion for class certification. For the reasons discussed, the motion for partial summary judgment is granted and the motion for class certification is denied.

### BACKGROUND

On May 1, 1991, Bonnie Nofsinger entered a dual fund annuity ("DFA") contract with Jackson, which was billed as a "supplemental retirement plan for teachers and employees of school

districts." Compl. ¶¶ 17, 21, ECF No. 70.[1] In a typical annuity contract, the insured pays a series of premiums that accumulate value until the contract's maturity date. Def.'s Statement of Undisputed Material Facts ("SUMF") ¶¶ 8-10, ECF No. 134-1.[2] A dual fund annuity differs from a traditional annuity contract because it accrues at two different values: the cash surrender value and the accumulated value. *Id.* ¶ 9. A DFA policyholder may withdraw either the partial or full amount of the cash surrender value at any time before the maturity date. *Id.* ¶ 10. To collect the accumulated value, however, the DFA policyholder must wait until the maturity date and then opt for it to be disbursed over a minimum period of 60 months. *Id.* ¶ 11.[3] At the time Nofsinger entered into the DFA, she was 43 years old and worked as an Illinois public high school teacher. Compl. ¶ 19. Originally, Nofsinger set the DFA's maturity date for May 1, 2008. *Id.* ¶ 21. At some point in 1993, however, Jackson changed the maturity date on Nofsinger's annuity contract from May 1, 2008 to March 2017. SUMF ¶¶ 12-13.

---

[1] Nofsinger's First Amended Complaint is the operative one and is referred to as "Complaint" throughout.

[2] At the outset, the Court notes that Nofsinger's responses to Jackson's Rule 56.1 statement of facts contains several errors. In some instances, Nofsinger disputes a fact by alleging new facts that are non-responsive to the text in question, which is expressly prohibited by Local Rule 56.1(e)(2). Responding to Jackson's paragraph 8, for example, Nofsinger admits it in part and disputes it in part, stating, "Plaintiff admits only that the DFA contract was a dual fund annuity that described each of the dual funds using multiple terms (not all of which were defined by the DFA contract)," and then goes on to list several other terms. Pl.'s Resp. to SUMF ¶ 8, ECF No. 152-13. This response adds more facts without properly disputing Jackson's statement that the DFA provided for an accumulated value and a cash surrender value. In these instances, the Court has deemed Nofsinger's responses admitted. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir.2003) ("Local Rule 56.1's enforcement provision provides that when a responding party's statement fails to controvert the facts as set forth in the moving party's statement in the manner dictated by the rule, those facts shall be deemed admitted for purposes of the motion.").

[3] Nofsinger disputes this fact, identifying the minimum period as 120 months, rather than 60 months, and citing to her original annuity contract. Pl.'s Resp. to SUMF ¶ 11. Upon review of the original contract, the minimum time period for receiving annuity proceeds is 60 months, if the policyholder collects it in yearly installments, or 120 months, if the policyholder opts for monthly installments. Pl.'s Ex. A at 5, ECF No. 152-2.

2

In January 2017, Jackson sent Nofsinger a letter (hereinafter the "Surrender Letter"), informing her that her maturity date was soon approaching and requesting that she select an option as to how she would like to receive the contract's income. *Id.* ¶ 16; Compl. ¶ 31. The Surrender Letter proposed four different options, including an option to receive a lump sum payout, defined as a partial or full liquidation (Option #3). Compl. ¶ 32, 36. Believing that by selecting the lump sum payout she would receive the full value of her contract, Nofsinger settled on this option. *Id.* ¶ 46.

Before finalizing her choice, however, she briefly met with her Edward Jones financial advisor, Jim Crowe, and his assistant, Julie Ludeman, on January 12, 2017. SUMF ¶ 18. After discussing the Surrender Letter, Ludeman called Jackson and relayed Nofsinger's decision to elect the lump sum payout for the full amount of her DFA. *Id.* ¶ 23. Nofsinger then signed a document that allowed for the transfer of the DFA funds to her Edward Jones account. *Id.* ¶ 24; Pl.'s Resp. to SUMF ¶ 24. Nofsinger did not consult her DFA contract prior to opting for its liquidation. SUMF ¶ 22.

On January 18, 2017, Jackson sent Nofsinger a disbursement letter, confirming her request to liquidate her DFA. *Id.* ¶ 26.[4] As of the date that Jackson processed the liquidation request, the accumulated value of Nofsinger's DFA was $103,962.96 and the cash surrender value was $86,075.28. *Id.* ¶¶ 27-28. In response to Nofsinger's liquidation request, Jackson paid her $86,055.28—the cash surrender value less a $20 wire fee. *Id.* ¶ 29.

Nofsinger brings this suit against Jackson on behalf of herself and all individuals who entered into an annuity contract or DFA with Jackson who were sent a Surrender Letter and

---

[4] Nofsinger disputes the characterization of this letter as a "Disbursement Letter," without providing a reason. Pl.'s Resp. to SUMF ¶ 26. The Court will refer to it as a disbursement letter for consistency and ease of reference.

3

subsequently assessed a "surrender charge" between 2012 and the present. Jurisdiction is proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one member of the putative class is a citizen of a different state than Jackson and the amount in controversy exceeds $5 million. Nofsinger is an Illinois resident, while Jackson is incorporated and maintains its principal place of business in Michigan.

After filing an amended complaint, Nofsinger moved for class certification. Jackson then moved for partial summary judgment as to all counts related to the Surrender Letter.

## DISCUSSION

In reviewing a motion for summary judgment, the court "must decide whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 637 (7th Cir. 2001). For a disagreement to require submission to a jury, there must be a genuine factual dispute, meaning that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All facts will be construed in the light most favorable to the nonmovant. *Packman*, 267 F.3d at 637.

To support her claims against Jackson for impermissibly changing her contract's maturity date and sending a deceptive Surrender Letter, Nofsinger has identified multiple theories of liability: (1) breach of contract regarding the maturity date change and surrender charge, respectively (Counts I and II); (2) conversion regarding the maturity date (Count III); (3) violation of the Michigan Consumer Protection Act regarding the Surrender Letter and surrender charge (Counts IV and V); and (4) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act regarding the Surrender Letter and surrender charge (Counts VI and VII). Jackson

has moved to dismiss Counts II, IV, V, VI, and VII—the breach of contract and consumer fraud counts related to the Surrender Letter and surrender charge.

I. **Choice of Law**

The parties apply both Illinois and Michigan law to Nofsinger's claims, without any discussion of which state's law controls. Choice of law is a threshold issue, and therefore this Court must address whether Illinois or Michigan law applies before delving into the substance of the issues presented by the pending motions.

"When a class representative proposes to certify a class to pursue state-law claims, a court must ensure that its choice of state law is not arbitrary or unfair." *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 583 (N.D. Ill. 2008) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 814-16 (1985)). If a federal court is sitting in diversity, it is required to apply the forum state's choice of law rules to determine which state's substantive law governs the claims asserted. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). In Illinois, that is the "most significant relationship" test, derived from the Second Restatement. *Carris v. Marriot Int'l, Inc.*, 466 F.3d 558, 560 (7th Cir. 2006). If there is no conflict with another state's law or the parties agree that a non-forum state's law applies, however, the court need not conduct a choice of law analysis. *Gunn v. Continental Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020).

While it is not entirely clear from the briefs, Jackson appears to apply Illinois law to the breach of contract theory of liability, and Nofsinger has raised no objection to that approach. That may be because Illinois and Michigan contract law do not appear to substantively differ,[5] but whatever the reason for Nofsinger's reticence, in the absence of any dispute, the Court may apply

---

[5] *See Louisiana Firefighters' Ret. Sys. v. Northern Trust Invs., N.A.*, 312 F.R.D. 501, 508 (N.D. Ill. 2015) (comparing elements of breach of contract in Michigan and Illinois law and concluding that they do not materially differ).

Illinois law to the breach of contract theory of liability and forego the choice of law analysis as to those counts.

The consumer fraud theory of liability presents a more complicated picture: both Michigan and Illinois laws cannot apply and the laws differ materially. Take, for example, the required elements to establish fraud under the MCPA versus the ICFA. Under the MCPA, a plaintiff must establish that the defendant intentionally made a material representation, intended for the plaintiff to rely on it, the plaintiff acted in reliance on it, and damages resulted. *In re OnStar Contract Litigation*, 278 F.R.D. 352, 376 (E.D. Mich. 2011). The ICFA is substantially similar with one added element—the deception must have "proximately caused the plaintiff's injury." *Mighty v. Safeguard Properties Management, LLC*, No. 16 C 10815, 2018 WL 5619451, at *9 (N.D. Ill. Oct. 30, 2018). Because proximate cause is a material difference between the two, a choice of law analysis is necessary.

To determine choice of law, the Second Restatement urges consideration of several factors, including the place where the plaintiff acted in reliance on the defendant's representations, the place where she received the representations, the residences of both parties, and the place where the plaintiff was obligated to render performance under the contract. *See* Restatement (Second) of Conflict of Laws § 148 (1971). These factors overwhelmingly favor Illinois—it is the state where Nofsinger entered the DFA, acted in reliance on it as well as rendered her performance by paying premiums towards it, and where she resides. As a result, Illinois law governs Nofsinger's consumer fraud theory of liability. Summary judgment is therefore granted to Jackson as to Counts IV and V, as both are premised on Michigan law.

## II. Motion for Summary Judgment

With the choice of law confusion cleared up, that leaves Nofsinger's surrender charge claim based on theories of breach of contract and violations of the ICFA.[6] The Court addresses these theories in turn.

### A. Breach of contract

To establish breach of contract under Illinois law, a plaintiff must demonstrate: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019). Nofsinger argues that Jackson breached their contract because the original contract does not mention or allow for the imposition of a surrender charge. Though neither the original contract nor the Surrender Letter mentions a surrender charge, the disbursement letter refers to a "surrender charge" of $17,887.68. The exact nature of this charge, be it an impermissible surrender charge or a difference between the accumulation value and surrender value, remains a factual dispute that must be left to the jury to decide, in Nofsinger's view.

---

[6] Under the one-way intervention doctrine, plaintiffs are precluded from moving for class certification after receiving a positive ruling on a claim's merits. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1057 (7th Cir. 2016). Doing so would be unfair to defendants because it would "allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one." *Id.* at 1058 (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974)).

Here, Jackson moved for summary judgment after Nofsinger had filed for class certification, but before the Court had ruled on the latter. Though the Court would typically be required to rule on the motion for class certification before turning to the motion for summary judgment, Jackson has effectively waived any objection to the inverse: "These are the same claims on which Nofsinger seeks class certification. If this Court were to rule in Jackson's favor in this Motion, it would obviate the need for the Court to rule on Nofsinger's Motion for Class Certification." Mem. in Support of Mot. for Partial Summ. J. at 1, n.1, ECF No. 134. Jackson's approach does not obviate the potential prejudice to the defendant of one-way intervention, but it does suffice to waive any such objection.

Jackson counters that referring to the difference between Jackson's accumulated annuity value and surrender value as a "surrender charge" in a later document does not constitute a contractual breach. It attributes the "surrender charge" reference to its CyberLife software system, which uses the surrender charge function to calculate the difference between the annuity and surrender values for DFA contracts. Jackson insists that Nofsinger was paid exactly what was owed to her under the terms of the DFA, given her decision to liquidate the contract instead of annuitizing it.

The Court agrees with Jackson. As Ms. Cynthia Campbell, Jackson's Rule 30(b)(6) witness, testified: "The surrender charge on CyberLife . . . is not truly a surrender charge, it is the two values that have been portrayed to the client throughout the life of their contract on statements and conforms and [is] based on the contract itself." Def.'s Ex. A at 116:11-16, ECF No. 160-2. While it might sow some confusion (and therefore spawn litigation), a change in the terminology Jackson uses to refer to the difference between the annuity and surrender values does not alter the contract, let alone breach it. Jackson performed properly under the terms of the contract and Surrender Letter by fulfilling Nofsinger's demand to take the lump sum payout and thereby liquidate it. Nofsinger does not argue that the amount she received upon termination was incorrect[7] or that she was subject to two deductions—one to reflect the difference in annuity values based on the withdrawal methodology and one to reflect a "surrender charge." The DFA provided for a lower payment if the annuity was liquidated on the maturity date and Nofsinger has adduced no evidence that the amount she received after application of the "surrender charge" was any different than the amount set forth in the DFA. As Jackson notes in its reply, the "surrender charge" breach

---

[7] To the extent that Nofsinger argues Jackson breached the contract by failing to disburse her income on her original May 2008 maturity date, that argument forms the basis of Count I, which is not at issue here.

8

of contract theory is a red herring. Accordingly, Nofsinger's breach of contract theory of liability related to the surrender charge fails and Count II is dismissed.

### B. Illinois Consumer Fraud and Deceptive Business Practices Act

A successful claim under the ICFA requires that the plaintiff "plead and prove that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019).

Nofsinger offers three reasons why the Surrender Letter qualifies as deceptive under the ICFA. First, she argues that Jackson used the Surrender Letter to induce annuity holders to choose to receive their income before their maturity date. Second, she asserts that the Surrender Letter was deceptive and unfair because it contained undefined terms. And finally, Nofsinger argues that the Surrender Letter failed to disclose that selecting certain options would force the consumer to inadvertently relinquish thousands of dollars in surrender charges.

The problem with Nofsinger's first argument is that she has not identified any potentially deceptive language or language of requirement in the Surrender Letter. The letter's introduction states: "The purpose of this letter is to help you select the Maturity or Income Date that best suits your personal needs, and to provide you a means to communicate that selection to us." Pl.'s Ex. D, ECF No. 152-5 at 2. The letter does not suggest that failure to select an option will interfere with the client's receipt of her annuity funds. Quite the opposite. The letter closes with the following stipulation, bolded and in all capital letters:

> Note: If we do not receive your selection by March 01, 2017, which is your current maturity or income date, we will pay you income according to 1) the default option declared in your annuity contract, or 2) if your annuity contract does not declare a default option, the option for a life annuity with a period certain. Payment will begin within 45 days after March 01, 2017.

*Id.* at 3. As Jackson rightly remarks, the Surrender Letter in no way states that a non-response would result in the loss of the contract's benefit.

Turning to Nofsinger's second argument, she asserts that the failure to define the term "lump sum payout"—the option she selected—was deceptive and unfair. "Lump sum payout" was not defined in the Surrender Letter nor mentioned in the original annuity contract. According to Nofsinger, the critical piece missing was a warning that a lump sum payout would constitute an early surrender of the annuity. In Jackson's view, a lump sum payout, defined in the Surrender Letter as a partial or full liquidation, is entirely consistent with the original contract's explanation of a partial or full withdrawal as the "net cash surrender value of the policy." Pl.'s Ex. A at 4, ECF No. 152-2.

Under Illinois law, insurance policies are treated the same as any other contract. *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 998 (7th Cir. 2018). If a term is undefined, a court will construe it "as an average, ordinary, normal, and reasonable person would understand" it. *Id.* (quoting *Gillen v. State Farm Mut. Auto. Ins. Co.*, 215 Ill.2d 381, 393, 830 N.E.2d 575 (2005)). Further, "an insured cannot manufacture ambiguity by taking portions of a policy in isolation; the policy (like any contract) must be read as a whole." *Id.* (internal citations omitted).

Reading the Surrender Letter in conjunction with the original contract from the perspective of a reasonable individual, "lump sum payout," defined as a partial or full liquidation, appears synonymous with cash partial or full withdrawal. The latter term is clearly set forth in the original contract as a sum withdrawn prior to the maturity date, equivalent to the net cash surrender value of the policy. This understanding of "lump sum payout" is further bolstered by the option that precedes it. Option #2 states: "I instruct Jackson Not to Reset my current Maturity Date to a later time, and I elect to receive an annuity payment. If you select this option, you will receive an annuity

payout beginning soon after your current Maturity Date or Income Date." Pl.'s Ex. D, ECF No. 152-5 at 3. Reading both options together, "lump sum payout" unambiguously appears to be an alternative to an annuity payment, not the same form of payment, as Nofsinger argues.

Nofsinger's final argument fares no better. As discussed above, Jackson's reference to the difference in values as a "surrender charge" in the disbursement letter was a change in terminology, not the imposition of a new fee. Nofsinger's last quarterly statement supports this fact, as it lists the accumulated value as $103,811 and the cash surrender value as $85,949. Def.'s Ex. 4, ECF No. 134-5 at 2. The difference between those two values is $17,862, almost exactly the sum of the so-called surrender charge. Accordingly, Nofsinger's argument that Jackson acted deceptively by not disclosing a surrender charge fails because it is based on the false premise that Jackson imposed a surrender charge.

Because Nofsinger has not shown a genuine dispute of material fact as to whether the Surrender Letter was deceptive or unfair, her ICFA theory of liability fails. Jackson is granted summary judgment as to Count VII.

### III. Motion for Class Certification

Nofsinger seeks certification of the following class and subclass under Federal Rule of Procedure 23:

> **Class:** All individuals who entered into an annuity contract with Defendant, and who from 2012 through the present were sent the Surrender Letter and subsequently assessed a charge by Defendant identified as a "Surrender Charge" against the value of their annuity according to Defendant's records.
>
> **Dual Fund Subclass:** All individuals who entered into a Dual Fund Annuity contract with Defendant and who from September 2012 through the present were sent the Surrender Letter and subsequently assessed a charge by Defendant identified as a "Surrender Charge" against the value of their Dual Fund Annuity according to Defendant's records.

11

Pl.'s Mot. for Class Certification at 11, ECF No. 104. Both the class and subclass rest on the surrender charge claim, which, as discussed above, fails as a matter of law. If a named plaintiff's claim lacks merit, "[t]he effect is to moot the question whether to certify the suit as a class action" if the basis for which the claim fails "would apply equally to any other member of the class." *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995). That is the case here: no class member could sustain a cognizable surrender charge claim based on the legal theories put forward. Nofsinger's motion for class certification is accordingly denied.[8]

\* \* \*

For the reasons stated above, Jackson's motion for partial summary judgment is granted and Nofsinger's motion for class certification is denied. Nofsinger's breach of contract, related to the maturity date, and conversion claim may proceed to trial.

Date: July 21, 2021

John J. Tharp, Jr.
United States District Judge

---

[8] Because Jackson has effectively waived any one-way intervention objection, however, this ruling will not necessarily have preclusive effect as to the putative class members *See id.* at 941-42 (in seeking summary judgment before ruling on class certification, "the defendant loses the preclusive effect on subsequent suits against him of class certification . . . and may be content to oppose the members of the class one by one").